IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Irene Donna Thomas, Esq. §<br>Plaintiff *pro se* §<br>§<br>v. §<br>§ Civil Action No. 2:21-cv-528<br>United Electrical, Radio and Machine §<br>Workers of America (UE), Carl Rosen, §<br>Individually and as UE General President, §<br>Andrew Dinkelaker, Individually and as §<br>UE Secretary-Treasurer, Eugene Elk, §<br>Individually and as UE Director of §<br>Organization, §<br>Defendants. § | |

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, Irene Donna Thomas, Esq., *pro se,* for her complaint against Defendants alleges as follows:

**I. INTRODUCTION**

1. Plaintiff brings this action against Defendant, United Electrical, Radio and Machine Workers of America (UE) and Individual Defendants, Carl Rosen, General President of the UE, Andrew Dinkelaker, Secretary-Treasurer of the UE and Eugene Elk, former Director of Organization of the UE, to remedy discrimination on the basis of race and sex, in the terms, conditions and privileges of employment and to remedy retaliation (including but not limited to retaliatory hostile work environment) against her for activity protected under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq* (Title VII), the Equal Pay Act of 1963, 29 U.S.C. §§ 206 *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*,

2. Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission on January 19, 2021. On November 22, 2021, more than 180 days after the filling of the Plaintiff's charge of discrimination, upon Plaintiff's request, the EEOC issued Plaintiff a Notice of Right to Sue a copy of which was provided to the Defendants. Plaintiff has thus complied with all administrative prerequisites to bring this lawsuit.

3. Upon receipt of a Right-to-Sue letter from the EEOC, Plaintiff will move to amend this Complaint to assert violations of the Americans with Disabilities Act, authorized under Section 107(a) of the

1

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.A. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.A. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a.

4. Plaintiff demands a jury trial.

## II. PARTIES

5. Plaintiff, Irene Donna Thomas, is a resident of Pittsburgh, Allegheny County, Pennsylvania. At all relevant times herein, Plaintiff served as General Counsel for the UE.

6. Defendant United Electrical, Radio and Machine Workers of America, is a labor union and is the National Office of the organization. It is organized as a not-for-profit corporation. Its office is located at 4 Smithfield Street, 9th Floor, Pittsburgh, Pennsylvania 15222.

7. Defendant Carl Rosen, a white male, upon information and belief, is a resident and citizen of the State of Illinois. As General President, Defendant UE provides him with living quarters located in Pittsburgh, Allegheny County, Pennsylvania. His place of employment is the UE's headquarters located at 4 Smithfield Street, 9th Floor, Pittsburgh, Pennsylvania 15222. Rosen is the General President of the UE.

8. Defendant Andrew Dinkelaker, a white male, upon information and belief, is a resident and citizen of the Commonwealth of Pennsylvania and resides in Pittsburgh, Allegheny County, Pennsylvania. His place of employment is the UE's headquarters located at 4 Smithfield Street, 9th Floor, Pittsburgh, Allegheny County, Pennsylvania. Dinkelaker is the National Secretary-Treasurer of the UE.

9. Defendant Eugene Elk, a white male, upon information and belief, is a resident and citizen of the Commonwealth of Pennsylvania and resides in Pittsburgh, Allegheny County, Pennsylvania. At all times relevant herein, his place of employment was the UE's headquarters located at 4 Smithfield Street, 9th Floor, Pittsburgh, Allegheny County, Pennsylvania. Elk was the former National Director of Organization of the UE until his retirements on or about August 2021.

## III. JURISDICTION AND VENUE

10. Jurisdiction of this court is invoked under 28 U.S.C. §§ 1331, 1343, 1367(a), 42 U.S.C.A. § 2000e- *et seq.,* 42 U.S.C. § 1981 and 29 U.S.C. §§ 206 *et seq.*

11. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. §1391 because Plaintiff resides in this judicial district and because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## IV. STATEMENT OF FACTS

12. Plaintiff is an African-American female. For the last approximate two years of her employment, Plaintiff was the only full-time African-American staff employee (excluding office clerical and temporary employees).

13. The UE hired Plaintiff effective July 1, 2017 as General Counsel in its National Office. Plaintiff was the sole in-house attorney.

14. Upon her hire, the UE provided Plaintiff with the UE Staff Policy which contained an anti-discrimination policy.

15. Between July 1, 2017 and the present, the former General President, and the Individual Defendants did not discuss with Plaintiff Defendant UE's organizational goals, how the General Counsel's position was related to those possible goals or the UE's philosophy.

16. Between July 1, 2017 and January 4, 2021, Plaintiff was not subject to disciplinary action for her work performance or any reason. During this period, Plaintiff did not face the threat of disciplinary action for any reason, nor had she received comments, memorandums, or directives critical of her work performance for any reason until she complained of discrimination and subsequently refused to retract her complaint of discrimination.

17. At various times throughout her employment, Plaintiff was subjected to insulting, racial microaggressions that were intended to, and did, degrade Plaintiff and was intended to and did presume that Plaintiff was incompetent and suggested that Plaintiff was less intelligent or capable than white attorneys.

18. On November 16, 2020, in response to specific legal advice, J. Burger, a white male UE staff member, asked Plaintiff to send him case law supporting Plaintiff's legal advice. Plaintiff stated that she believed that his conduct was racist/discriminatory and explained the basis for her belief.

19. Defendant UE and the Individual Defendants knew of Plaintiff's complaint of Burger's offensive racial conduct because Plaintiff notified Eugene Elk, the then Director of Organization, by email, of her discrimination complaint. Elk was both Plaintiff's and Burger's immediate superior.

20. On December 1, 2020, Rosen, Dinkelaker, Elk and Plaintiff participated in a conference call to investigate Plaintiff's complaint of discrimination about Burger's racial conduct. Among other things, Defendant Elk asserted that Burger and Plaintiff were "two of our better staff members," defendant Rosen stated that the officers understood that Plaintiff felt that Burger stated some things that in such a way that she felt that he made a racist attack on her and defendants defendants stated that they did not question that Plaintiff believed that Burger challenged her because she is a Black woman.

21. During the December 1 conference call, the defendants attacked Plaintiff's perception that Burger had engaged in racist conduct. Defendant Elk repeatedly ridiculed and belittled Plaintiff's complaint of discrimination---stating over and over in a monotone fashion, "please … send … case … law" ignoring the context within which Plaintiff made her complaint.

22. During the December 1, 2020 conference call, Defendants Rosen, Dinkelaker and Elk strongly

suggested that Plaintiff write a letter to Burger retracting her statement that Burger was a racist or otherwise racially discriminatory. Plaintiff declined to retract her complaint of race discrimination; but, agreed to write a letter agreeing that she could have couched her comments in more pleasant terms.

23. On December 14, 2020, again, Rosen, Dinkelaker, Elk and Plaintiff participated in a telephone conference about her allegations of racism by Burger. Among other things, Rosen, Dinkelaker and Elk defended Burger by indicating that Burger did not intend to act in a discriminatory manner. Defendant Elk, on behalf of all defendants, asked Plaintiff to write a memo of retraction of her "accusation" as stated in her November 16 email to Burger. Defendant Rosen clarified Elk's statement by stating that Plaintiff could say that she would like to withdraw the statements in her email without stating anything about why she is doing so. The defendants stated that Burger should not have that sitting in his file. The deadline for submission of the "letter" requested by Rosen, Dinkelaker and Elk was set for December 21, 2020.

24. On December 21, 2020, Plaintiff provided a letter to Defendants Rosen, Dinkelaker and Elk in response to their request. She agreed that her remarks could have been stated in a manner that was not so pleasant for Burger; but, also informed Burger that his email to her was deeply offensive to her.

25. Between December 22, 2020 and January 4, 2020, Plaintiff was supposed to be on an authorized vacation period.

26. By letter dated December 23, 2020, Rosen, Dinkelaker and Elk informed Plaintiff that her December 21, 2020 email was not "responsive" to their concerns and, therefore, they would not be sharing the letter with Burger.

27. By email dated December 23, 2020, Plaintiff asked Defendant Elk, "Then, what is it that you [are] requiring me to say?"

28. By email dated December 23, 2020, Defendant Elk responded, "The officers are not requiring you to write anything…we strongly believe that your email to J was inappropriate, and we requested that you consider retracting it…."

29. By email dated December 24, 2020, plaintiff, *inter alia,* reminded defendants that she never said nor indicated in any manner that she would write a retraction of her discrimination complaint. Plaintiff stated that the Defendants' rejection of the letter she wrote clearly indicated to her that the Defendants expected her to write a retraction and that, consequently, she was "now clearly feeling that it is not acceptable to oppose race discrimination in the UE" and felt "dissuaded from doing so in the future."

30. In Plaintiff's December 24, 2020 email, among other things, Plaintiff stated, "I have a legal right to make a complaint of discrimination and to oppose discriminatory treatment, without being put in the position of feeling dissuaded from making such complaints in the future, i.e., being forced to write a retraction – or even asked to do it – when I do make a complaint."

31. By email dated January 5, 2021, Defendant Elk responded to Plaintiff's email to set the record straight and, among other things, expressing surprise and dismay that she decided to go back and mention an email exchange from more than a year-and-a-half ago. Elk stated that he had apologized

4

thought that the incident had long ago both been settled amicably and forgiven.

32.   By email dated January 5, 2021, Plaintiff responded, *inter alia,* that defendant Elk's apology did not change how his conduct made her feel.  Plaintiff further stated that the "officers' request for her to retract her statement accusing J of discrimination/racism was unlawful.  Period."

33.   During Plaintiff's tenure with Defendant UE, Defendant Elk has been responsible for the complete eradication of all employees of color by replacing exiting African-American staff employees with all white new hires.

34.   Since January 6, 2021, Plaintiff has been the victim of a vicious, relentless campaign of retaliation and a retaliatory hostile work environment because of her complaint of discrimination and er refusal to retract her complaint of race discrimination.

35.   On January 6, 2021, Plaintiff received a letter from Dinkelaker regarding, among other things, Plaintiff's claimed performance deficiencies for the past three years.  Between July 1, 2017 and January 6, 2021, Dinkelaker had never served as Plaintiff's direct superior and was not directly involved in the incidents mentioned.   Before January 6, 2021, Dinkelaker had never mentioned any alleged performance deficiencies to Plaintiff.

36.   On January 6, 2021, Defendant Elk emailed Plaintiff to determine the status of potential litigation based on a Summons that had been slipped under the Local UE office door.  Plaintiff could not fully answer his inquiries because Elk had not provided her with information in response to her questions of January 3, 2021.  Among other things, Defendant Elk asked plaintiff what had been done about our need to hire local counsel.  Plaintiff responded that if Elk was unwilling to ask Mike Healey (white male), outside counsel, for local counsel, she would contact the bar association to do it.

37.   On January 6, 2021, Plaintiff received an email from Elk pressuring her about concerning the service of the summons in a potential matter in California.  Elk asked, "What about the other issues that I raised with you concerning the service of the summons? Can you answer those questions."   But, Plaintiff responded: "On January 3, I sent you an email concerning the apparent defective service of the complaint.  I asked several questions to further determine if the service was defective.  I have yet to receive a response to those questions."  Also, Elk's questions regarding a possible time bar had already been addressed and previously provided to Elk in a detailed brief.

38.   On January 7, 2021, Plaintiff received an email from Defendant Elk questioning whether she had contacted a North Dakota attorney suggested to her by Mike Healey, outside counsel (white male) to file a motion to compel arbitration, and questioned whether Plaintiff had reached out to the Labor Board Agent to seek a reversal on the Board's decision to defer a matter.

39.   On January 7, 2021, Plaintiff responded to Defendant Elk's email by stating that Healey had provided her with the name of a lawyer who was situated in North Dakota, but the matter was situated in South Dakota.  Plaintiff also informed Elk on January 7, 2021, that she had never received a directive to move forward with a motion to compel arbitration in the Justin Thompson matter.  Plaintiff informed Defendant Elk that it was questionable that a motion to compel arbitration was even ripe in the Justin Thompson matter and, therefore, Plaintiff had not contacted a South Dakota attorney and had not

5

received approval for the expenditure associated with such a motion.  Plaintiff also stated that she had responded to the Labor Board Agent on December 3, 2020 and had sent Elk a copy of that response.

40.   On January 7, 2021, Defendant Elk asked plaintiff if her recommendation that we acquire local counsel in Southern California through the bar association the best advice you can give us on securing representation so that we are best positioned to defend ourselves in the Williams case at Local 1018. Plaintiff responded that "at this time, yes, it is my best advice.  I do not live in Southern California.  I do not work in Southern California.  So I do not have personal knowledge of labor and employment law attorneys that would meet our needs and, also, have reasonable rates.  The recommendation to obtain a referral from the bar association is equivalent to, or even better than, Mike Healy's use of the AFL-CIO Lawyers List to make his recommendations because the bar association vets attorneys who seek to be placed on their referral list."

41.   By email dated January 8, 2021, Defendant Elk, in a instructed Plaintiff to call Mike Healey, a white male, and get the names of attorneys he may have worked with, are National Lawyers Guild attorneys, or known AFL-CIO attorneys who can serve as local counsel for us and hire one who Mike recommended.  He directed Plaintiff to ask Healey about what he thought would be a reasonable hourly rate.  Elk further directed that Plaintiff to do the vast majority of the work on the case and California local counsel would handle local counsel matters. Defendant's Elk's directive was intended to and designed to humiliate, degrade, demoralize and intimidate Plaintiff by forcing Plaintiff, the UE General Counsel, to appear small by submitting to the directives of Mike Healey, outside counsel, a white man.

42.   Mike Healey, as outside counsel, during Plaintiff's employment only referred white males as local counsel.   During her employment, Plaintiff asked Healey about whether his firm employed African-American or other counsel of color at his firm.   He answered no.

43.   On January 13, 2021, I received an email from Elk complaining about a matter involving an employee named Kevin Lee and an agreement to withdraw from arbitration.  Elk complained that on Monday, January 11, 2021, he had asked Plaintiff to respond to whether she was still working to assist Marc Baca on withdrawing the Kevin Lee grievance.  Elk indicated that Plaintiff had not responded to his inquiry so, therefore, he provided the assistance that Marc needed to get a written and signed withdrawal from the grievant [to] withdraw the grievance from arbitration.   "Please know that you now don't have to do this work."   Defendant Elk slipped his inquiry concerning Kevin Lee in an unrelated email string to create a situation for reprimanding the Plaintiff.   The Monday, January 11, 2021 email referred to by Elk was included in an email under the heading "RE:  noon weds assessment VP FLSA Wage and Hour Potential class action suit meeting w Hernandez Lawfirm," a topic having nothing to do with Kevin Lee or his settlement agreement.

44.   Plaintiff had informed Elk on January 5, 2021 that under Article 12, Section B of the collective bargaining agreement with Lee's employer, the language read:  "the Union may not maintain a grievance on behalf of an employee(s) without the employee's continued consent."  Plaintiff informed Elk that because Mr. Lee did not consent with our moving forward, we did not need a withdrawal agreement.  Second, Elk had never responded to Plaintiff's request for additional information to address this issue in her email dated December 30, 2020. Third, on January 6, Defendant Elk assigned her to the matter of Cecile Williams' California litigation which because of its procedural posture, and her

6

assignment to draft all documents for local counsel, where a potential default was at stake, in the absence of a firm directive in the Lee matter, Plaintiff had determined that the default issue took precedence.

45. By letter dated January 14, 2021, defendant Dinkelaker, on behalf of all Individual Defendants, explicitly noting that Plaintiff had received "a disciplinary warning concerning a recent "personal attack" [Plaintiff] launched against a member of our staff and a non-disciplinary discussion of recent performance concerns [the Defendants] have about the manner in which [Plaintiff] have been performing [her] job as UE General Counsel."  The Defendants' letter intentionally and selectively chose statements from Plaintiff's responses to the Defendants' onslaught of communication and taking Plaintiffs' statements out of context to support the Defendants' false claim that Plaintiff acted in a "combative and uncooperative manner" in correspondence on January 6 and 7, 2021.

46. On January 14, 2021, Defendant Kinkelaker, utilizing Defendant Rosen's telephone (773-579-1813), contacted plaintiff on behalf of all Defendants.  This call lasted 40:10.  Among other things, Dinkelaker, in a hostile manner, asserted that the Individual Defendants lacked trust in Plaintiff's ability to do her job and raised the possibility of the UE and Plaintiff entertaining my "separation" from the UE's employment.  The Defendants' suggestion that Plaintiff separate from its employment was amazing to her given the numerous disciplinary actions provided to a white female, Annie MacDonald, for inadequate job performance and an inability to perform the basic functions of a staff member; but, who the Defendants had not terminated from its employ.  Plaintiff asked Dinkelaker why she would consider a separation when she had not done anything wrong, and that the only thing she had done was complain about race discrimination and refuse to retract her statement about discrimination.  Dinkelaker remained silent.

47. On January 14, 2021, Plaintiff received an email from Rosen (white male).  Among other things, he accused her of being uncooperative.

48. On January 14, 2021, Plaintiff received an email from Defendant Elk about a suggestion plaintiff provided to Field Organizer Ben Wilson that Local 625 should be extremely careful about changing the language in the contract after a worker wanted to file a grievance under the current, clear, unambiguous language of the collective bargaining agreement because the local's conduct could appear to be arbitrary.   Plaintiff further asserted that, in that case, the union could find itself the recipient of a duty of fair representation charge with the National Labor Relations Board.

49. By email dated January 15, 2021, Defendant Elk, a non-attorney, criticized Plaintiff's suggestion as incorrect and asserted what he believed to be the prevailing law.   He also stated that Plaintiff must understand that in her position as general counsel, staff will of course take anything she says as advice and it will carry great weight as they convey it to local leadership.   "This is part of why we are so concerned about [Plaintiff's] failures in this area of your work that we previously outlined to you."

50. Defendant Elk's "legal opinion" was inconsistent with the National Labor Relations Act as interpreted by the National Labor Relations Board.

51. Plaintiff attempted to respond to each of the misleading, ferocious missives dispatched by Rosen, Dinkelaker and Elk; but, the sheer volume of the onslaught proved to be too much.

52. Beginning January 19, 2021, Plaintiff began a period of leave due to the severe emotional distress, anxiety, harassment, panic attacks and the physical manifestation of these issues based upon the Defendants' severe retaliatory conduct.

53. On January 20, 2020, Plaintiff filed a Charge of Discrimination, assigned Charge No. 533-2021-00645, with the Equal Employment Opportunity Commission (EEOC) alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, on the basis of race, sex and retaliation and a violation of the Equal Pay Act on the basis of race and sex.

54. By email dated February 3, 2021, Defendant Carl Rosen notified plaintiff, among others, that on January 28, 2021, the UE General Executive Board adopted a Non-Discrimination Policy for UE staff who are not covered by a collective bargaining agreement and that this Policy updates and clarifies the policy in the UE Staff Handbook.

55. The actions alleged *supra,* caused plaintiff to be constructively discharged from her employment, in that defendants intentionally created the above-described working conditions, which were so intolerable or aggravated at the time of plaintiff's resignation that a reasonable employer would have realized that a reasonable person in plaintiff's position would be compelled to resign. As a proximate result of these working conditions, plaintiff did resign from his/her employment effective August 5, 2021.

56. By this the above-described conduct, the Defendants have subjected Plaintiff to unlawful retaliation and a retaliatory hostile work environment action for making a complaint of race discrimination and unlawful retaliation because Plaintiff complained of discrimination against a white male employee and subsequently refused to retract her complaint of race discrimination.

57. The Defendants' conduct of a hostile, racially, retaliatory, discriminatory manner was intended to and did provide aid and support to a white male employee accused of race discrimination by an African-American female, and to maintain its preferred all-white union staff, except for the most menial positions and to discourage and squelch complaints of race discrimination within Defendant UE.   This allegation is supported by the following further allegations:

58. The UE's intransigent refusal, until January 28, 2021, to adopt a staff Anti-Discrimination Policy prohibiting discrimination, including employment, on the basis of race.   I presented a draft policy to the then-National President (Peter Knowlton, white male), on May 7, 2019 for consideration and adoption by the General Executive Board.   Neither Knowlton nor the General Executive Board took no action on this document.   On April 29, 2020, I presented this document to Rosen (white male) for consideration and adoption by the General Executive Board, but neither he nor the General Executive Board took action on this policy.   The draft Policy, among other things, prohibited discrimination on the basis of race and provided a complaint procedure for employees confronted with discrimination on the job.   Only after Plaintiff repeatedly complained, in response to the Defendants' retaliatory conduct, that the

defendants had not adopted an anti-race discrimination policy, and after Plaintiff filed a Charge of Discrimination with the (EEOC) did the UE adopted an anti-discrimination policy for all staff prohibiting race discrimination.

59. The fact that a white female, Annie MacDonald, was retained on staff after numerous disciplinary actions for inadequate job performance and an inability to perform the basic functions of a Field Organizer after serving in this role for about ten years.

60. The Defendants' conduct, as described above, was intentional discrimination done with malice and/or reckless disregard of and/or deliberate indifference to Plaintiff thereby entitling her to an award of punitive damages against each defendant.

61. As a direct result of the above-stated acts, Plaintiff has suffered and psychological trauma requiring counseling, humiliation, and will suffer loss of benefits associated with her employment.

62. As a result of the Defendants' acts, Plaintiff is entitled to monetary damages and penalties available by law, with costs, punitive damages and attorneys fees against each Defendant.

## COUNT I—UNLAWFUL RETALIATION—ALL DEFENDANTS

63. Plaintiff realleges and incorporates by reference Paragraphs 1 through 61 above with the same force and effect as if fully set out in specific detail here.

64. The above-referenced conduct was made pursuant to a scheme, plan or course of conduct resulting in numerous reprimands, threats and other intimidating conduct designed to retaliate against Plaintiff for complaining of race discrimination and in retaliation for her refusal to retract her complaint of race discrimination, and designed to force Plaintiff's involuntary resignation in retaliation for her complaint of race discrimination and in retaliation for her refusal to retract her complaint of race discrimination.

65. Defendant UE, by and through its agents and employees, and Defendants Rosen, Dinkelaker and Elk Individually, have harassed, intimidated and retaliated against Plaintiff in violation of Section 1981, for opposing racially discriminatory conduct, which included her November 16, 2020 email, her subsequent complaint of racially discriminatory conduct asserted during the Defendant UE's investigatory meeting, and her verbal complaints of racially discriminatory conduct asserted in emails and asserted during her January 14, 2021 telephone conversation with Defendant Dinkelaker, who was acting on behalf of all Individual Defendants.

66. As a direct result of Defendants' unlawful acts, Plaintiff has suffered severe mental anguish, requiring counseling, humiliation, embarrassment, physical injury, physical discomfort, the inability to effectively carry out the duties of her office as UE General Counsel, and other damages, mental, physical and emotional.  These damages flow directly from, and are intimately connected to, the deprivations, violations and infringements of Plaintiff's rights under 42 U.S.C. § 1981.

67. In its discriminatory actions as discussed above, Defendants have acted with malice and/or reckless disregard of Plaintiff's rights under federal law, thereby entitling her to an award of punitive damages.

68. As a result of Defendants' unlawful acts, plaintiff is entitled to money damages and penalties available by law, against each defendant in the sum of $3,000,000.00.

## COUNT II – UNLAWFUL RETALIATORY HOSTILE WORK ENVIRONMENT

## ALL DEFENDANTS

69. Plaintiff realleges and incorporates by reference Paragraphs 1 through 62 above with the same force and effect as if fully set out in specific detail here.

70. By the above-referenced conduct and other additional conduct, Defendants acted pursuant to a scheme, plan or course of conduct resulting in numerous reprimands, threats and other intimidating conduct designed to retaliate against Plaintiff for complaining of race discrimination and in retaliation for Plaintiff's refusal to retract her complaint of race discrimination, and designed to force Plaintiff's involuntary resignation in retaliation for her complaint of race discrimination and in retaliation for her refusal to retract her complaint of race discrimination.

71. Defendant UE, by and through its agents and employees, and Defendants Rosen, Dinkelaker and Elk Individually, have harassed, intimidated and retaliated against Plaintiff in violation of Section 1981, for opposing racially discriminatory conduct, which included her November 16, 2020 email, her subsequent complaint of racially discriminatory conduct asserted during the Defendant UE's investigatory meeting, and her verbal complaints of racially discriminatory conduct asserted in emails and asserted during her January 14, 2021 telephone conversation with Defendant Dinkelaker, who was acting on behalf of all Individual Defendants.

72. As a direct result of Defendants' unlawful acts, Plaintiff has suffered severe mental anguish, requiring counseling, embarrassment, physical injury, physical discomfort, the inability to effectively carry out the duties of her office as UE General Counsel, and other damages, mental, physical and emotional. These damages flow directly from, and are intimately connected to, the deprivations, violations and infringements of Plaintiff's rights under 42 U.S.C. § 1981.

73. Defendants intentionally discriminated against Plaintiff with malice and/or reckless disregard of Plaintiff's rights under federal law, and did so in the face of a perceived risk that these actions were prohibited by law thereby entitling her to an award of punitive damages.

74. As a result of Defendants' unlawful acts, plaintiff is entitled to money damages and penalties available by law, against each defendant for a minimum of $3,000,000.00.

## COUNT III – UNLAWFUL RACE AND SEX DISCRIMINATION AND

## VIOLATION OF EQUAL PAY ACT

75. During Plaintiff's initial hire, she was informed that the pay scale was the same as that of an International Representative.

76. Plaintiff agreed to that pay scale.

77. After serving with the UE for several months as General Counsel, Plaintiff noticed that the National Officers utilized outside attorneys, Michael Healey, Esq., and Peter Goslien, both white males, as a *de facto* employees to perform work identical to that performed by the UE's General Counsel and who exhibited characteristics of an employee.

78. Healey and Goslein performed the same or substantially similar services for the UE, requiring equal skill, effort and responsibility, at a pay rate substantially greater than the rate paid to Plaintiff, an African-American female.

79. Defendants circumvented the UE's pay policy by utilizing these *de facto* employees and paying Plaintiff significantly less than white males.

80. Plaintiff complained about the disparity in pay to no avail.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court award damages against each Defendant representing:

1. Compensatory damages, including but not limited to, back pay, front pay and all lost benefits,

2. Emotional distress damages in an amount not less than $200,000;

3. Punitive damages in an amount not less than $300,000 against each defendant in an amount sufficient to punish Defendants UE, Rosen, Dinkelaker and Elk and to deter others from engaging in similar misconduct;

4. An amount sufficient to address adverse tax consequences;

5. Lost interest on social security benefits Plaintiff would have received had she been permitted to retire at age 72,

6. Loss of continuation of life insurance benefits;

7. An award of attorney's fees and costs, if appropriate;

8. A declaratory judgment holding that the defendants scheme, plan and course of conduct to retaliate against Plaintiff for complaining of race discrimination and in retaliation for her refusal to retract her complaint of race discrimination, and to force Plaintiff's involuntary resignation in retaliation for her

11

complaint of race discrimination and in retaliation for her refusal to retract her complaint of race discrimination is unlawful and contrary to the provisions of 42 U.S.C. § 1981, and

9. Any other relief that the Court deems just and/or equitable and/or proper.

Dated: December 14, 2021

*Irene Donna Thomas, Esq.*
LABOR AND EMPLOYMENT LAW

_____
Irene Donna Thomas, Esq, *pro se*